HOME BUILDING and LOAN COMPANY, a building and loan association under the laws of the State of Florida,

*Appellant,* v. T. F. RIVERS, et al, *Appellees.*

145 So. 873.

En Banc.

*Milam, McIlvaine & Milam,* for Appellant;

*Blount & Jones,* for Appellees.

BUFORD, J.—Appellant was complainant in the court below and filed its bill against the appellees to foreclose a mortgage. The mortgage was given to secure a note. A

copy of the note and a copy of the mortgage were 'each attached to the bill of complaint and by apt words made a part thereof.

It was alleged that default had occurred in the payment of the note and the interest thereon, default in the payment of taxes and default in the payment of insurance premiums.

The bill of complaint did not comply with the requirements as stated in the case of Hemphill v. Nelson, 95, Fla. 498, 116 Sou. 498, as follows:

"If either party to a suit in chancery relies upon an instrument or writing as the basis for his right or defense, he must in his pleading state the substance thereof and file with or attach to such pleading as an exhibit such paper or instrument, or a true copy thereof, or assign by allegations in his pleadings some satisfactory reason for their non-production."

The bill of complaint contained the following averment:

"That on, to-wit, the 14th day of April, 1927, the defendants, T. F. Rivers and Ida Rivers, his wife, being indebted to your orator in the sum of Three Thousand and no/100 ($3,000.00) Dollars, made, executed and delivered to your orator a certain mortgage note, said note being payable in installments of Thirteen and 50/100 ($13.50) Dollars per month on or before the first Tuesday of each and every month after the date of said note, together with interest and premiums to be charged at the rate of eighty-five (85c) cents per month on each $100.00 of the principal of said note remaining unpaid, copy of which note is hereto attached as Exhibit 1 and made a part hereof.

"That in order to secure the note mentioned in the preceding paragraph, said defendants, T. F. Rivers and Ida Rivers, his wife, on the 14th day of April, 1927, made, executed and delivered to your orator a certain mortgage deed grant-

ing to your orator a mortgage lien on the following described property in Duval County, Florida, to-wit:

"Lot 'A' of West Hollybrook, a subdivision of part of Lot Three (3) Section Sixteen (16) Township Two (2) South Range Twenty-six (26) East, as recorded in Plat Book Twelve (12) Page Fifty-one ·(51) of the Current Public Records of Duval County, Florida.

"A copy of said mortgage deed being hereto attached as Exhibit 2 and made a part of this bill as if copied at length ·herein."

"That the said mortgagors, T. F. Rivers and Ida Rivers, his wife, as well as all of the other defendants of this suit, have breached the terms of said mortgage deed and mortgage note in that they have wholly neglected and refused to pay to your orator the sums of money agreed to be paid by the said promissory note in the following particulars, that is to say

(a) Amount of principal in arrears................$297.00
(b) Amount of Interest in arrears.....................$535.20

which said payments are now actually overdue and unpaid by said defendants, T. F. Rivers and Ida Rivers, to the complainants; that the said mortgagors defaulted in the payment of insurance and taxes covenanted to be paid ·under the terms of said mortgage and your orator has made the following payments of insurance and taxes so defaulted by the mortgagor:

(a) Fire Insurance in the amount of................$40,39
(b) Tornado Insurance in the amount of............ 17.40
(c) State and County Taxes in the amount of.... 31.15
(c) City Taxes in the amount of........................... 11.64

that by reason of said defaults the complainant has elected and does hereby elect to immediately demand the entire

balance unpaid under said mortgage and note, to-wit: Thirty-five Hundred Fifteen and 27/100 ($3515.27) Dollars, and to foreclose the same; that the said $3515.27 Dollars, being principal, interest; insurance and taxes now unpaid under said mortgage note is actually overdue and unpaid by said defendants, T. F. Rivers and Ida Rivers, his wife, to the complainant."

Motion was made to dismiss the bill of complaint on the following grounds:

"1. That said bill of complaint is insufficient in that it fails to allege any covenants or undertakings by these defendants in respect to the alleged mortgage therein sought to be foreclosed.

"2. That it does not affirmatively appear from the allegation of said Bill of Complaint that these defendants did stipulate and agree to do and perform the several matters and things alleged in said Bill of Complaint as constituting breaches of said alleged mortgage by these defendants."

The motion was granted.

From this Order appeal was entered.

The question presented is whether or not the Bill was sufficient, although it did not state the substance of the covenants or the mortgage which were alleged to have been breached in such Bill without reference to the copy of the mortgage attached thereto and made a part thereof.

By reference to the copy of the mortgage, which was attached to and made a part of the Bill of Complaint, we find that the mortgage was given to secure a note for the sum of $3,000.00 payable in monthly installments of $13.50 each, together with interest and premiums to be charged at the rate of 85c per month for each $100.00 of the principal and that the makers were obligated to pay all costs of collec-

tion in case of suit, including a reasonable attorney's fees. The mortgage then recites:

"And whereas, said mortgagors agree with said Company to pay or cause to be paid to the order of said Company, without demand therefor, according to its constitution, by-laws and rules, the following sums and amounts of money until said advance and all lawful charges have been fully repaid, as follows:

"1. The monthly dues on said shares in the sum of Forty-five cents for each One Hundred Dollars of said advance, during the first and each succeeding year, until the dues so paid, together with the profits and other payments credited to said shares, shall amount to said sum advanced.

"2. The monthly interest and premium bid for said advance in the sum of Eighty-five cents per month from date hereof on each One Hundred Dollars of said advance, subject to such reduction or rebate as the by-laws and rules provide.

"3. All fines, penalties and other charges which the said mortgagors shall incur as a member of said Company, in accordance with its by-laws.

"4. All taxes and assessments as they become due and payable, whether it be upon the premises, mortgage, or the debt, thereby secured, and all insurance premiums thereon, and to keep the buildings on said premises, insured for the benefit of said Company in an insurance Company or companies approved by it, for not less than $3000.00;

"And whereas, it is agreed that the holder of this mortgage in any action to foreclose it, shall be entitled as a matter of strict right (without any notice and without regard to the adequacy of any security for the debt or the solvency or insolvency of the mortgagors, their grantee and assigns),

to the appointment of a receiver of the mortgaged premises and of the rents and profits thereof.

"And whereas, it is agreed that time is an essential in this contract, and if default shall be made in any of the aforesaid payments for the term of thirty days, or if any of the agreements, covenants or conditions herein contained, shall be violated by said mortgagors or either of them, then the whole sum secured hereby shall become due and payable, and the said Company shall have the right to immediate foreclosure, with reasonable attorney's fees, and such taxes, abstract fees, assessments or insurance premiums payable by grantors, but paid by grantee, to be added to principal hereby secured, and becomes a lien on said premises, with interest and such fines as by-laws may provide. And any payment after default, or any delay in foreclosure by said Company shall not be construed as a waiver or to annul its rights of foreclosure.

"Now, if the said mortgagors shall punctually pay, or cause to be paid said dues, interest, premium and all other payments, as herein provided, when the same shall become due, as above set forth, then this mortgage to be void; otherwise in full force and virtue."

The Bill alleges, as per quotation *supra,* the breach of certain of the obligations above quoted with as much certainty as would have obtained had the covenants been set out *in haec verba* in the Bill of Complaint, Section 22 of Chapter 14658, Acts of 1931, known as the 1931 Chancery Practice Act, provides as follows:

"Brevity and Relevancy in Pleadings: Motions to Strike. —All pleadings in an equity cause shall be expressed in as brief and succinct terms as reasonably practicable, and shall contain no unneccessary recitals of deeds, documents, contracts or instrument *in haec verba,* or other irrelevant,

redundant or impertinent matter or scandalous matter not relevant to the suit. As far as practicable, all pleadings shall be stated in successively numbered paragraphs. No paper shall be unnecessarily annexed as exhibits. If any pleading or other paper filed in the cause shall violate the provisions of this section to the prejudice of the opposing party affected, the court may, on motion to strike or of its own motion, expunge the objectionable matter at the cost of the offending party, upon such terms and conditions as shall be fixed by the court."

Mr. Edward McCarthy, Jr., in his annotation of the 1931 Chancery Act, referring to this section, says:

"Until the decision in Hemphill vs. Nelson, 95 Fla. 498, 116 So. 498, the general rule seems to have been that written instruments need only be pleaded according to their legal effect, and, instead of setting out an instrument *in haec verba* or attaching a copy as an exhibit, the material substance and legal effect only need be stated, followed by some such words, as 'as by the said indenture, when produced will appear.' Daniell's Ch. Pl. and Pr. 6th Am. Ed. Vol. 1, p. 363, 367; Fletcher Eq. Pl. and Pr. Sec. 99, p. 132. And see Savage v. Ross, 59 Fla., 407, 52, So. 16 (a law case). This is a well settled exception to the general rule that a pleading should not allege conclusions of law. Florida equity rule 19 was apparently derived from the English rule through old federal equity rule 26 (1842). Under the practice following these rules, if a written instrument is otherwise sufficiently set out in a pleading, it is not necessary further to set it forth *in haec verba* or even to attach it as an exhibit."

And, again, he says.

"This section does not affect other existing express statutory requirements concerning suits on written instru-

ments; for example, the statute requiring a copy of the mortgage to be attached to a bill for foreclosure. Section 3845 R. G. S., (5748) (C. G. L.). But this section seems intended to change the rule announced in the 6th headnote of Hemphill v. Nelson, 95 Fla. 498, 116 So. 498, and repeated in Eadson v. Cent. F. Trust Co. (Fla.) 129 So. 698, and Citizens State Bank v. Jones (Fla.) 131 So. 369, to the effect that a copy of the instrument must always be attached as an exhibit in addition to stating its substance."

We concur in the conclusion reached by the learned annotator and hold that under the 1931 Chancery Practice Act that, where in a bill to foreclose a mortgage a copy of the mortgage is attached to and made a part of the bill of complaint, it is not necessary to copy in the bill of complaint the covenants and conditions contained in the mortgage. It is only necessary to allege a breach of the covenants or conditions and to allege the facts constituting such breach. The copy of the mortgage made a part of the bill of complaint may be looked to to ascertain the provisions of such covenants and conditions alleged to have been breached.

Section 3836 R. G. S. of Fla., 5724 C. G. L., provides:

"All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."

Therefore, any instrument in writing given to secure the payment of money or intended to create a lien on certain

property to secure the payment of money, is a mortgage and is foreclosable as such in equity, regardless of whether it contains any of the covenants incident to a mortgage or not. A mortgage conveys no conditional estate to the mortgagee but only creates a lien on the estate of the mortgagor.

The bill of complaint alleges "That in order to secure the note mentioned in the preceding paragraph, said defendants, T. F. Rivers and Ida Rivers, his wife, on the 14th day of April, 1927, made, executed and delivered to your orator a certain mortgage deed granting to your orator a mortgage lien on" described property and that "a copy of said mortgage deed being hereto attached as Exhibit 2 and made a part of this bill as if copied at length herein."

Defaults under the terms of the mortgage are definitely alleged.

While it would be better pleading to distinctly allege that the parties entered into the covenants, etc., as stated in the mortgage, yet it is alleged that the defendants, "made, executed and delivered to your orator a certain mortgage and granting to your orator a mortgage lien on" described land, and that "a copy of said mortgage deed is attached and made a part of this bill as if copied at length herein," and the bill of complaint does not wholly fail to state a cause of action as to be subject to a motion to dismiss.

The statute requires "the original mortgage, or a copy thereof" to be annexed to the bill of complaint as a part thereof; and the statute does not expressly require the copy to be certified. Section 5748 (3845) Compiled General Laws. No doubt the statute regards the signature of counsel or the oath of the party to the bill of complaint, as being a sufficient authentication of the copy of the mortgage that is attached to the bill of complaint, unless the correctness of the copy is duly challenged. Sec. 4903 (3517)

C. G. L. was repealed by Chapter 13541 Acts of 1929; Routh v. Richards, 102 Fla. 752, 138 Sou. 69.

· To the extent that this opinion is in conflict with the holding in Hemphill vs. Nelson, *supra*, hereinbefore referred to, and the other cases decided by this Court which followed the holding enunciated in that case, such former holdings are modified because of the application of Section 22 of the 1931 Chancery Practice Act hereinbefore quoted.

· For the reasons stated, the order appealed from should be reversed. It is so ordered.

Reversed.

Davis, C. J., and Whitfield, and Terrell, J. J., concur.

Ellis, J., dissents.

Brown, J., dissents in part.

Brown, J. (Dissenting in part).—I am inclined to the view that under the new Chancery Act, the bill should at least allege the legal effect of the written instrument, and that, in a bill for foreclosure for the entire debt evidenced by the attached mortgage because of a partial default, there should be an allegation that the mortgage contained a covenant authorizing such procedure. In other words, if complainant is relying upon an acceleration clause in the mortgage in order to entitle him to foreclose for the entire debt, there being only a partial default alleged, this provision of the mortgage should be briefly pleaded in the bill "according to its legal effect." Thus, as to bills for foreclosure, there would be very little conflict between the rule announced in Hemphill v. Nelson and the new Chancery rule requiring brevity and succinctness in pleadings, for the rule in Hemphill v. Nelson only required that "the substance" of the written instrument sued on to be alleged in the body of the bill. However concisely expressed, a bill in

equity may be it should make out at least a good *prima facie* case for the relief prayed, and this should appear from a reading of the bill itself, without reference to the Exhibits attached.

ELLIS, J., Disssenting.—Chapter 14658 Laws of Florida, 1931, commonly known as the 1931 Chancery Act, was designed to expedite chancery procedure, not to set up new standards in pleading by which clearness, distinctness or conciseness of allegation and averment may be measured.

The purpose of all pleading, whether at law or in chancery, is to present clearly, distinctly and concisely an issue of fact material and necessary to the judgment or decree to be rendered. The chancery act, *supra,* was designed to be a step in the direction of reaching that goal. It was never intended by the framers of the act, nor do the words of it indicate, that its purpose was to put a premium upon indifferent pleading.

The purpose of attaching the written instrument sued upon to a declaration or a bill in chancery and by apt words making it a part of the declaration or bill was to enable the court to determine whether the allegations of the bill, or declaration as to the legal effect of the instrument, or the particular clause or covenant contained in it of which a breach constituting the cause of action or complaint is alleged, are correctly stated, not to substitute the instrument itself for the declaration or bill. If the legal effect of the covenants contained in the mortgage or instrument sued upon is alleged in the bill and a breach of such covenants is alleged in the bill or declaration, the rule does not require that the substance of the entire instrument or mortgage should be set out in the bill and to that extent only was the rule designed to modify the rule announced in Hemphill v. Nelson, 95 Fla. 498, 116 South Rep. 498, and repeated in

Eadson v. Cent. Farmers' Trust Co., 100 Fla. 348, 129 Sou. Rep. 698, and Citizens State Bank vs. Jones, 100 Fla. 1492, 131 South. Rep. 369, if indeed the rule relating to the subject as defined by those cases rightfully interpreted is contrary to the requirements of the Chancery Act, *supra*.

In my opinion, the confusion, if any, produced by the above cases, in so far as they relate to the matter under consideration, arises from the use of untechnical language in the cases, statutes and text books relating to the subject.

A person bringing an action because of the breach by another of an agreement, promise or covenant contained in a written instrument rests his action upon the breach of the particular agreement, promise or covenant as he interprets its effect. He does not, except in the most general and untechnical sense, bring his action upon the "entire instrument. or writing."

The rules of pleading indeed never required more as to necessary allegations or averments in an action brought for a breach of some covenant or agreement contained in a writing than is required by the Chancery Act.

I am of the opinion therefore that the motion to dismiss was well founded and that the order of the Chancellor, which contained a very clear discussion of the rule of pleading and most intelligible elucidation of its purpose, should be affirmed.