A. W. SPINNEY, operating as Spinney Lumber & Manufacturing Company, v. SANFORD-ORLANDO KENNEL CLUB, INC., WALTER C. ANDERSON and EDWARD F. McPADDEN.

166 So. 559
Division B.
Opinion Filed February 28, 1936.
Rehearing Denied March 28, 1936.

*George P. Garrett,* for Appellant;

*George A. DeCottes,* for Appellees.

ELLIS, P. J.—This is a suit by bill in chancery to enforce a materialman's lien against certain properties of the Sanford-Orlando Kennel Club, Inc., for materials furnished by A. W. Spinney Appellant. Walter C. Anderson and Edward F. McPadden were joined as defendants because of some alleged interest they had in the premises. The property upon which the lien is alleged to exist consists of two lots of land described as Blocks 5 and 6 of Kathryn Park in Seminole County. The suit was begun in that county. The material was alleged to have been furnished between January 1st and February 10, 1934, and delivered upon the property which is the site of the Company's race track or grounds for dogs. The amount of the debt claimed is $804.31.

The Sanford-Orlando Kennel Club, Inc., is a corporation. The bill alleged that at the time it was filed the property was in a condition for the opening of its gates to the public for the amusement afforded by dog races and that the Company had a permit duly issued for such amusement.

The Company answered the bill denying all the material allegations. Anderson and McPadden each answered the bill also denying its material allegations.

There was a final decree against the complainant and the bill ordered to be dismissed. That decree was entered in April, 1935, from which the complainant took an appeal. There was evidence that the material was delivered upon the Company's race track site and went into the construction and repair of some of its buildings ·or grandstand and "bleachers" and race track and rail.

The circumstances in which the alleged claim arose were in substance as follows: " 'A man by the name of Craig,' " who said he represented John Gehrum of Cincinnati came to Spinney's place and made enquiries about the material desired, but furnished no list. Later a man· named Banderbank, representing John Gehrum, came to Spinney's place accompanied by a carpenter foreman and gave to Spinney a list of the materials desired. The materials were delivered ·in accordance with such order. Demand was made by Spinney upon John Gehrum in the early part of February, 1934, for payment of the bill.

The material was purchased to "repair the Sanford-Orlando Kennel Club," but no further evidence was furnished to Spinney that Gehrum was authorized to purchase the material for the Corporation other than a telegram from Anderson to Louis Entzminger that Gehrum would operate the club, and to turn the same over to him. No conversation or understanding was had by Spinney with any officer of the Corporation relating to the material furnished.

Anderson is Vice-President and McPadden is Secretary of the Corporation. Anderson had been in charge of the affairs of the Corporation for "some time past."

The case turns upon the relation which Gehrum bore to the Corporation at the time the materials were furnished by Spinney for the repair of the Corporation's properties.

The Chancellor must have found one of two facts, or both facts, against the contention of the complainant. First, was the material furnished as alleged, and used in the repair of the corporation's properties? Second, was there privity of contract established between Spinney and the Corporation through Gehrum?

We are mindful of the rule long established in this Court that the findings of fact by the Chancellor will not be disturbed unless clearly erroneous. Farrington v. Harrison, 95 Fla. 769, 116 South. Rep. 497; Mock v. Thompson, 58 Fla. 477, 50 South. Rep. 673; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 231; Kent v. Knowles, 101 Fla. 1375, 133 South. Rep. 315.

The evidence as exhibited to us by the record impels us to the conclusion that the materials were furnished by Spinney and that the same were used in the repair of the Corporation's properties. Of that proposition there seems to be little or no doubt as disclosed by the record. There is likewise little or no evidence to refute the proposition that there existed privity of contract between the Corporation and Spinney relating to the repair of the premises and the material necessary to accomplish the same. The word "privity," as used in the statute relating to the acquisition of liens, Sec. 5380 C. G. L. 1927, is not employed in the technical sense of the common law. It implies special or particular knowledge showing active comment or concurrence. It means a partaker; persons having a mutual interest in the same action or thing by some relation other than that of actual contract between them. Waring v. Bass, 76 Fla. 583, 80 South. Rep. 514; Taylor v. Ferroman

Properties, Inc., 103 Fla. 960, 139 South. Rep. 149; Harper Lumber & Mfg. Co. v Teate, 98 Fla. 1055, 125 South. Rep. 21.

It is true that a materialman's lien is not created by contract but by statute. Nevertheless a contract with the owner or his duly authorized agent for the furnishing of the materials is essential as a basis or foundation for the lien. Tallahassee Variety Works v. Brown, 106 Fla. 599, 602, 138 South. Rep. 759, 144 South. Rep. 848.

There is no conflict between the Waring-Bass case, *supra*, and the last case cited. A contract between the owner and material man is essential, but the contract may be implied as in the Waring-Bass case. In the latter case Donegan, who owned the property, authorized Waring to enter into the contract for the construction of the building, therefore it was held that privity existed between Donegan and Bass, whose labor and material entered into the building constructed. In the Tallahassee Variety Works case, *supra*, Mrs. Brown owned the lot. She consented to her husband making a contract with Hancock for the construction of the building, the contractor to furnish all materials and labor. The lien was asserted by a third person from whom the contractor had purchased the material. The court merely held that knowledge on the part of Brown that a third person was furnishing materials to the contractor, whose duty it was under the contract to furnish all material, created no "privity" between Brown and the materialman.

In the case at bar the facts are nearly analogous to the Waring-Bass case. The Sanford-Orlando Kennel Club held the certificate or permission to operate the race track. That permission under the law was not transferable, so the track had to be operated in the name of the Corporation. Gehrum was authorized to operate the track by the Corporation,

which through its officers knew that materials were necessary to repair its properties in order to properly operate the track. It authorized Gehrum to make such repairs. The terms on which Gehrum was to make such repairs was a matter between Gehrum and the Corporation which was to be benefitted by such improvement and because of which it expected to profit by Gehrum's activities. All of this Spinney knew. So the material was furnished by him to the benefit of the Corporation's properties all of which with the knowledge of the Corporation through its officers. In such circumstances "privity" between the Corporation and Spinney was established within the meaning of the Section 5380, *supra*.

The Chancellor erred in dismissing the bill, so the decree is reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.